UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| BANCO SAFRA, S.A. – CAYMAN ISLANDS BRANCH, Individually and on Behalf of All Others Similarly Situated, | : : : : : | Case No.: 1:16-cv-08800-RMB |
| Plaintiff, | : : | Hon. Richard M. Berman |
| *v.* | : : : | ORAL ARGUMENT REQUESTED |
| SAMARCO MINERAÇÃO S.A., BHP BILLITON LIMITED, BHP BILLITON PLC, BHP BILLITON BRASIL LTDA., and VALE S.A., | : : : : : : | |
| Defendants. | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York  10022
Phone:  (212) 957-7600

*Attorneys for Defendant Samarco Mineração S.A.*

**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Phone:  (212) 558-1000

*Attorneys for Defendants BHP Billiton Limited,*
*BHP Billiton Plc, and BHP Billiton Brasil Ltda.*

**GIBSON DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166
Phone:  (212) 351-4000

*Attorneys for Defendant Vale, S.A.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

RELEVANT FACTUAL ALLEGATIONS ............................................................... 2

I.      PLAINTIFF FAILS TO ALLEGE U.S. SECURITIES LAW CLAIMS........................... 3

II.     THE SAC FAILS TO ALLEGE SECURITIES FRAUD.................................................. 6

III.    PLAINTIFF'S CLAIMS, AT MOST, ASSERT CORPORATE
        MISMANAGEMENT....................................................................................................... 7

IV.     PLAINTIFF CANNOT PLEAD FRAUD BASED ON STATEMENTS OUTSIDE
        THE OFFERING MEMORANDA. ................................................................................. 9

V.      PLAINTIFF FAILS TO ALLEGE ANY OMISSIONS OR
        MISREPRESENTATIONS BY SAMARCO. ................................................................. 10

        A.      Plaintiff's Allegations Based on Samarco's Supposed Omissions Fail. ............... 10

                1.      Samarco Disclosed the Well-Known Risks of Its Operations. ................. 10

                2.      Samarco Had No Duty to Disclose the Granular Details of Its
                        Business. ...................................................................................................... 12

        B.      Plaintiff Has Not Pleaded Misrepresentations by Samarco. ................................. 13

VI.     VALE AND BHP CANNOT BE HELD LIABLE FOR SAMARCO'S ALLEGED
        MISSTATEMENTS OR OMISSIONS. ......................................................................... 14

VII.    BHP DID NOT MAKE ANY ACTIONABLE MISSTATEMENTS OR
        OMISSIONS. .................................................................................................................. 15

        A.      Many of BHP's Alleged Misstatements Do Not Pertain to Samarco. ................. 15

        B.      BHP's Generalized Statements about Safety, Risk Management, and
                Compliance Are Not Actionable............................................................................. 17

        C.      BHP's Statements Regarding Past Production Levels, Cost Reductions,
                Tailings Disposal and the Toxicity of the Tailings Are Neither False Nor
                Adequately Pled as Misstatements.......................................................................... 18

        D.      Plaintiff Does Not Allege Any Actionable Omissions by BHP. .......................... 19

VIII.   VALE DID NOT MAKE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS. ................................................................................................ 20

      A.   Plaintiff Bases Its Claims on Statements by Vale that Indisputably Were True, And Did Not Require Further Disclosures. ................................. 21

      B.   Vale's Risk-Management Statements Were Non-Actionable Forward-Looking Statements Unrelated to Samarco. .......................................... 22

IX.   PLAINTIFF HAS NOT PLEADED SCIENTER. ......................................... 23

      A.   Plaintiff Has Failed To Allege Scienter of Samarco. ............................ 24

      B.   Plaintiff Has Failed To Allege Scienter of BHP. ................................. 25

            1.   Plaintiff Cannot Show Scienter Regarding the Pristino Report. ............... 27

            2.   Plaintiff Has Not Pleaded Scienter Regarding the Tailings Mudflow. ...... 27

            3.   Post-Incident Events Do Not Support a Strong Inference of Scienter. ...... 28

      C.   Plaintiff Has Failed To Show Scienter Of Vale. .................................... 29

X.   PLAINTIFF'S ALLEGATIONS REGARDING POST-ACCIDENT STATEMENTS MUST BE DISMISSED FOR FAILURE TO SHOW LOSS CAUSATION. ............................................................................................ 29

XI.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A). ....................... 30

XII.   THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED. ................................ 30

      A.   Plaintiff Fails to State a Claim for Common Law Fraud. ..................... 31

      B.   Plaintiff Does Not Adequately Plead Aiding and Abetting Fraud. ....................... 31

      C.   Plaintiff Fails to State a Claim for Negligent Misrepresentation. ......................... 31

CONCLUSION .......................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012) ............................................................. 4, 5, 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d. Cir. 2007) ............................................................ 6, 24

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................ 13

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ......................................................... 18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ......................................................... 13, 17

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    65 N.Y.2d 536 (1985) ........................................................................ 32

*Doscher v. Sobel & Co., LLC*,
    No. 14 Civ. 646 RMB, 2015 WL 774695 (S.D.N.Y. Feb. 11, 2015) ...................................... 12

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ......................................................... 6, 13

*Foley v. Transocean Ltd.*,
    861 F. Supp. 2d 197 (S.D.N.Y. 2012) ......................................... 7, 26, 29

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) ................................................................ 10

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ................................................ 14

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013) .......................................... 11, 20

*In re BHP Billiton Ltd. Securities Litigation*,
    No. 16-cv-1445 (S.D.N.Y. Aug. 28, 2017)................................ 16, 17, 18

*In re Citigroup Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004) .................................................. 7

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ................................................................ 25

*In re PXRE Grp., Ltd., Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) .............................................................. 28

*In re Societe Generale Sec. Litig.*,
   2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) ............................................. 26, 29

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
   222 F. Supp. 2d 216 (E.D.N.Y. 2002) .............................................................. 32

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) ...................................................................... 12, 20, 22

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .................................................. 28

*In re Union Carbide Class Action Sec. Litig.*,
   648 F. Supp. 1322 (S.D.N.Y. 1986) ................................................................... 7

*In re Vale S.A. Sec. Litig.*,
   2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ..................................... 16, 17, 20, 21

*In re Vivendi Universal, S.A., Sec. Litig.*,
   842 F. Supp. 2d 522 (S.D.N.Y. 2012) .............................................................. 30

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2017 WL 3058563 (N.D. Cal. July 19, 2017) ............. 9

*Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*,
   620 F.3d 137 (2d Cir. 2010) ............................................................................ 23

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ....................................................................................... 14

*Kalnit v. Eichler*,
   264 F.3d 131 (2001) ....................................................................................... 24

*Kleinman v. Elan Corp.*,
   706 F.3d 145 (2d Cir. 2013) ............................................................................ 12

*Kolari v. N.Y.-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006) ............................................................................ 30

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013) .............................................................. 15

*Morrison v. National Australia Bank,*
    561 U.S. 247 (2010) ........................................................................................... 1, 4

*One-O-One Enters., Inc. v. Caruso,*
    848 F.2d 1283 (D.C. Cir. 1988) ............................................................................ 10

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE,*
    763 F.3d 198 (2d Cir. 2014) ............................................................................... 4, 6

*Redtail Leasing, Inc. v. Bellezza,*
    No. 95 Civ. 5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ........................... 31

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000) ..................................................................................... 3

*S.E.C. v. Boock,*
    No. 09 Civ. 8261(DLC), 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011) ................. 3

*S.E.C. v. Lee,*
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................................. 31

*Saltz v. First Frontier, LP,*
    782 F. Supp. 2d 61 (S.D.N.Y. 2010) .................................................................... 27

*Santa Fe Indus., Inc. v. Green,*
    430 U.S. 462 (1977) ................................................................................................ 7

*Sinay* v. *CNOOC Limited,*
    2013 WL 1890291 (S.D.N.Y. May 6, 2013) ........................................................ 26

*SRM Glob. Fund L.P. v. Countrywide Fin. Corp.,*
    No. 09 Civ. 5064 (RMB),
    2010 WL 2473595 (S.D.N.Y. June 17, 2010) ................................................. 22, 31

*Stratte-McClure v. Morgan Stanley,*
    776 F.3d 94 (2d. Cir. 2015) .................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ................................................................................. 3, 6, 23, 24

*United States v. Vilar,*
    729 F.3d 62 (2d Cir. 2013) ...................................................................................... 5

*Vladimir v. Bioenvision Inc.,*
    606 F. Supp. 2d 473 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 141 (2d Cir. 2010) ...... 12

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) .......................................................................................... 23

15 U.S.C. § 78u-5(c) .................................................................................................. 18

15 U.S.C. §§ 78u-5(c), (i)(1)(B) (2016) ..................................................................... 22

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................... 6

**Other Authorities**

2001 International Commission on Large Dams ("ICOLD") *Tailings Dams, Risks of Dangerous Occurrences, Lessons Learnt from Practical Experiences* .................................... 11

# INTRODUCTION[1]

Plaintiff's Second Amended Complaint (the "SAC"), its third attempt to plead federal securities and state-law claims, does not cure the numerous deficiencies in Plaintiff's prior filings.  Indeed, the only changes in the SAC are a vain effort to plead a domestic securities transaction.

Plaintiff has not pled domestic securities claims under *Morrison v. National Australia Bank*, 561 U.S. 247 (2010).  The standard is clear:  Plaintiff must allege facts on every transaction at issue showing that (1) irrevocable liability to purchase the security was incurred in the U.S. or (2) title transferred in the U.S.  Rather than meet this settled standard, the SAC vaguely states that transactions were consummated using U.S. dollars, involved U.S. banks, and that counterparties "and/or their agents" were located in the U.S.  Plaintiff also alleges that certain aftermarket transactions were reported to a FINRA system, but that only indicates a U.S. broker/dealer was involved, an insufficient detail.  Plaintiff's *third* failure to meet the *Morrison* standard means its federal claims must be dismissed.  *See* Section I.

Even if the SAC were not barred by *Morrison*, it should be dismissed for the following reasons.  *First,* Plaintiff fails to articulate any actionable claims under the federal securities laws, as the SAC improperly seeks to bootstrap general allegations of corporate mismanagement into securities fraud and to allege fraud based on statements outside of the offering materials at issue. *See* Sections II, III, and IV.

*Second*, Plaintiff fails to allege actionable omissions or misrepresentations by Samarco Mineração S.A. ("Samarco"); BHP Billiton Limited, BHP Billiton PLC, BHP Billiton Brasil Ltda. ("BHP Brasil," and, collectively with the other BHP Defendants, "BHP"); or Vale S.A.

---

[1]  All citations to "Ex." are to exhibits to the Declaration of Nathaniel P.T. Read submitted herewith.

("Vale"), and cannot show that BHP and Vale are responsible for Samarco's statements.  *See* Sections V, VI, VII, and VIII.

*Third*, Plaintiff fails to allege scienter, relying instead on generalized allegations that do not show any Defendant's culpable mental state.  *See* Section IX.

*Fourth,* Plaintiff's allegations regarding statements after the Fundão Dam failed must be dismissed because those statements caused no loss.  *See* Section X.

*Finally*, Plaintiff's Section 20(a) claims must be dismissed because its other federal claims fail and Plaintiff's common-law claims are facially deficient.  *See* Sections XI and XII.

## RELEVANT FACTUAL ALLEGATIONS

***The Parties.***  Samarco is a Brazilian mining company whose entire business was mining and processing iron ore, and the transport and export of iron ore pellets.  SAC ¶ 55-57.  Samarco is a non-operated joint venture of BHP Brasil and Vale, each of which hold a 50% share.  *Id.* ¶ 58.  Plaintiff, an offshore branch of a Brazilian bank, is a "sophisticated institutional investor." (Dkt. 18 at 8.)

***Samarco's Independent Management and Operations.***  Samarco's Executive Board and management operated Samarco and ensured the "legal and corporate compliance of Samarco." SAC ¶ 83.  Samarco's management was responsible for "the preparation and fair presentation of the company's management reports and financial statements" and Samarco's Sustainability Reports.  *Id.* ¶ 86.  It was also responsible for Samarco's internal controls and ensuring that its public statements did not contain material misstatements or omissions.  *Id.*

Compared with its management, Samarco's Board of Directors, which consists of Vale and BHP Brasil appointees, had a limited oversight role.  Samarco's Board typically met three times a year, and had "power" over "strategic" aspects of Samarco, such as "to define the . . . general direction of the business."  *Id.* ¶¶ 61-64, 76.  The SAC does not (and cannot) allege that

2

Vale or BHP had the right or obligation to control the content or dissemination of Samarco's disclosures.

   ***Samarco's Notes and Disclosures of Risks.***   Between July 2013 and May 2015, Plaintiff allegedly purchased $135,102,000 of unsecured Samarco notes (the "Notes").  SAC ¶ 25 & Ex. A; Dkt. 18 at 6.  The Notes were issued pursuant to Regulation S, an exemption "for securities offered and sold outside the United States" from registration under Section 5 of the Securities Act of 1933.  *S.E.C. v. Boock*, No. 09 Civ. 8261 (DLC), 2011 WL 3792819, *20 (S.D.N.Y. Aug. 25, 2011).  The first page of each Offering Memorandum states that the Regulation S Notes "will not be registered" under the Securities Act and (subject to certain exceptions) "may not be offered or sold directly or indirectly within the United States or to or for the account or benefit of U.S. persons."  Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1.[2]  The Notes were not listed on any U.S. exchange.  Each Offering Memorandum also contains a "Notice to Investors" that expressly states that "You should only rely on the information contained in this offering memorandum."  Ex. 1 at ii; Ex. 2 at ii; Ex. 3 at ii.  Further, in purchasing Notes, Plaintiff acknowledged that no one was authorized "to give any information or to make any representation concerning [Samarco] or the notes other than" the information in the Offering Memoranda.  Ex. 1 at ii-iii; Ex. 2 at ii-iii; Ex. 3 at ii-iii.[3]

## I.   PLAINTIFF FAILS TO ALLEGE U.S. SECURITIES LAW CLAIMS.

   Under *Morrison,* federal securities claims are cognizable only if they arise from

---

[2]  In deciding this motion, the Court may consider documents, such as the Offering Memoranda, "that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  In addition, the Court may consider documents "incorporated into the complaint by reference" and Vale's and BHP's SEC filings. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[3]  The Offering Memoranda further states that "Information on or accessible through [Samarco's] website does not form part of this offering memorandum and should not be relied upon."  Ex. 1 at 6; Ex. 2 at 7; Ex. 3 at 7.

transactions in (1) a security listed on an U.S. exchange or (2) any other security in a U.S.

transaction.  561 U.S. 247, 273 (2010).  For securities not listed on a U.S. exchange, a plaintiff

must include facts "suggesting [1] that [plaintiff] became irrevocably bound" in the U.S. or "[2]

that title was transferred within the United States, including, but not limited to, facts concerning

the formation of the contracts, the placement of purchase orders, the passing of title, or the

exchange of money."  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d

Cir. 2012).  A domestic securities transaction is required, but not sufficient: Plaintiff must also

show that its claims are not "so predominantly foreign as to be impermissibly extraterritorial."

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).

Plaintiff concedes, as it must, that (1) the Notes were not listed on any U.S. exchange;

(2) Plaintiff acquired the Notes under Regulation S; and (3) the initial offering sales of those

Notes were done "only outside" the U.S.  Dkt. No. 66 at 7 n.4.  Plaintiff's admissions bar claims

on its initial offering purchases, and Plaintiff's bare-bones allegations of U.S. involvement show

why its claims based on other transactions cannot proceed.

Plaintiff's allegations are, in their entirety that: its transactions in the Notes were

"consummated with U.S. dollars"; they were conducted "through Banco Safra's bank accounts

located in New York"; the "counterparties to the transactions and/or their agents were located in

the United States"; and certain after-market transactions were reported to TRACE, an automated

FINRA reporting system.  SAC ¶¶ 26-28.  These allegations do not meet Plaintiff's burden.

The Notes were dollar-denominated, so *any* transaction in them was in U.S. dollars; and,

of course, U.S. dollars can be used anywhere.  Those allegations thus do not show a U.S.

transaction.  Similarly, vague allegations that transactions were conducted "*through*" Plaintiff's

bank accounts in New York with counterparties "*and/or their agents*" located in the U.S. do not

4

show a domestic transaction.  It is unclear how a transaction is conducted "through" a New York

bank account, but the reasonable inference is that funds from foreign bank accounts passed

through a New York bank account at some point in the transaction.  That allegation does not

speak to whether irrevocable liability was incurred or title passed in New York.  *See U.S. v.*

*Vilar*, 729 F.3d 62, 77 n.10 (2d Cir. 2013) (allegations of funds wired "to a New York bank," and

that relevant custodian "was a New York securities firm" held insufficient).

     Similarly, Plaintiff does not allege the direct involvement of any U.S. party, only the

involvement of U.S. counterparties "and/or their agents."  But even direct allegations of U.S.

counterparties is not enough: as *Absolute Activist* held, alleging involvement of U.S. broker-

dealers or other U.S. counterparties is insufficient; a plaintiff must allege where contracts were

formed, title passed, or money was exchanged.  677 F.3d at 68-70.  The SAC includes no such

allegations.

     Finally, Plaintiff alleges that its after-market transactions, other than those with Barclays,

were reported to the FINRA TRACE system.  SAC ¶ 28.  But nothing in the TRACE regulations

states that non-U.S. transactions cannot be reported.  Indeed, FINRA member firms are *required*

to report all of their transactions in TRACE-Eligible Securities, which include dollar-

denominated debt securities issued by a foreign private issuer (e.g. the Notes).  FINRA Rule

6710(a).  Plaintiff cites a 2013 release stating that Regulation S debt securities sold in off-shore

transactions need not be reported to TRACE.  SAC ¶ 28.  But that does not show that Regulation

S transactions reported to TRACE are U.S. transactions under *Morrison*.  Plaintiff provides no

information showing that parties only report transactions to TRACE where irrevocable liability

for those transactions was incurred in the U.S. or title passed in the U.S.

Defendants have not located a single case even taking TRACE reporting into account, much less holding the mere allegation of it sufficient.  TRACE reporting shows, at most, that a U.S. broker-dealer was involved in the transaction, which is insufficient to meet Plaintiff's burden.  *Absolute Activist,* 677 F.3d at 68-70.  Further, Plaintiff does not allege any U.S. conduct by anyone relevant to its claims, making its claims overwhelmingly foreign and thus outside the scope of the federal securities laws.  *Parkcentral*, 763 F.3d at 216-17 (affirming dismissal because of the "dominance of foreign elements").  Plaintiff's federal claims must be dismissed with prejudice.

## II.    THE SAC FAILS TO ALLEGE SECURITIES FRAUD.

To plead federal securities fraud, Plaintiff must allege (1) misstatements or omissions of material fact; (2) made with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiff relied; and (5) that plaintiff's reliance proximately caused its injury. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d. Cir. 2015).

In addition, under Fed. R. Civ. P. 9(b), Plaintiff must (1) specify the allegedly fraudulent statements, "(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d. Cir. 2007).  Further, the PSLRA requires specific pleading of "each statement alleged to have been misleading," the reason(s) each statement is misleading, and "facts giving rise to" a strong inference of scienter. *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Inferences favoring Plaintiff may be drawn, but a court must also consider "plausible nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

**III.   PLAINTIFF'S CLAIMS, AT MOST, ASSERT CORPORATE MISMANAGEMENT.**

Securities law claims cannot rest on allegations of "internal corporate mismanagement." *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 479 (1977).  Allegations that ask a court to "distinguish between conduct that is reasonable and unreasonable, or informed or uninformed" may raise claims under "state fiduciary law," but are not actionable under Section 10(b); nor is "fraud by hindsight" allowed.  *In re Citigroup Sec. Litig.*, 330 F. Supp. 2d 367, 376-77 (S.D.N.Y. 2004) (internal quotation marks and citations omitted).

Courts properly dismiss corporate mismanagement allegations masquerading as securities fraud actions.  For example, in *In re Union Carbide Class Action Sec. Litig.*, securities claims were dismissed based on allegations that Union Carbide had touted its "exceptional qualifications for meeting rough environmental and safety standards," but failed to disclose risks associated with manufacturing a particular chemical, the "existence of major safety defects," and the potential financial ramifications of a chemical accident.  648 F. Supp. 1322, 1326-27 (S.D.N.Y. 1986).  The dismissed claims sounded "more in possible corporate mismanagement, viewed retrospectively, than in fraud" and represented an improper attempt to establish "materiality through hindsight." *Id.* at 1327-28.  Similarly, in *Foley v. Transocean Ltd.,* the court dismissed claims relying on the purported failure to disclose all safety information; the issuer disclosed its safety practices and otherwise allowing the claim to proceed "because certain undisclosed safety issues may have contributed to the Deepwater Horizon disaster[] would be to permit a claim based on 'fraud by hindsight.'"  861 F. Supp. 2d 197, 211-12 (S.D.N.Y. 2012).

Plaintiff here similarly alleges only hindsight criticism of Samarco's efforts to address operational risk.  The SAC concedes that Samarco accurately described its operations and risks, and took substantial actions to address safety generally and for the Fundão Dam in particular, but

now attacks Samarco's considered decisions.  *See, e.g.,* SAC ¶¶ 119-20, 124, 136-38, 195-97, 216, 219.  In a particularly misguided move, Plaintiff objects to Samarco's choice not to implement certain recommendations made in a report by the Instituto Pristino, an "environmental and geotechnical modelling institute" retained by the State of Minas Gerais in connection with Samarco's application to expand the Fundão Dam and renew its license to operate the Dam.  *Id.* ¶¶ 180-83.  But Plaintiff concedes that the recommendations in the Pristino Report were not mandatory, and that, notwithstanding the Report, Samarco's application was *granted* by "Minas Gerais' environmental regulator."  *Id.* ¶¶ 181, 184.  Plaintiff thus bases its claims on Samarco's lawful action rather than any purported misrepresentation or omission.

For hundreds of additional paragraphs, Plaintiff alleges truthful statements and asserts supposed omissions.  *See, e.g.,* SAC ¶¶ 264-467.  But the purported omissions are really Plaintiff's post facto allegations that Samarco should have managed its business differently.  For example, Plaintiff does not allege that Samarco misrepresented its efforts to manage operational costs, capital expenditures, and profits.  SAC ¶¶ 335-65.  Instead, Plaintiff alleges that Samarco should have disclosed that the "cost cutting and reduction in capital expenditures were due, in part, to the failure to expend the capital measures to ensure the safety of the mining operations, including the Fundão Dam."  SAC ¶ 366; *see also id.* ¶¶ 424, 450.  Plaintiff's description of Samarco's tailings-disposal management follows this pattern.  Plaintiff does not allege falsity in Samarco's description of (1) its "in-house engineering team" overseeing tailings dams, (2) the Fundão Dam, or (3) the amount of tailings disposed of.  SAC ¶¶ 310-23.  Instead, Plaintiff argues that Samarco "disregarded the risks posed by the increase in tailings" and allegedly did not "implement a viable plan to handle" increased tailings, including tailings deposited by Vale under contractual rights.  SAC ¶ 334.

8

Similarly, Plaintiff does not allege that Samarco's descriptions of its safety, risk management, and monitoring efforts are inaccurate on their face; rather, Plaintiff alleges that Samarco "failed to implement appropriate safety, risk management and monitoring protocols[.]" SAC ¶ 424; *see also id.* ¶¶ 385-423.  Plaintiff also takes issue with Defendants' statements regarding their commitments to health and safety.  SAC ¶¶ 425-49.  Plaintiff cannot credibly allege that these statements were inaccurate, and instead alleges in retrospect that Defendants were "not focused on health and safety, and caring for health and safety was not a priority," because Samarco failed to take certain safety measures Plaintiff now alleges it should have. SAC ¶ 450.  Plaintiff does not assert disclosure claims; instead, it offers hindsight attacks on Samarco's operational choices.  Those attacks should not survive dismissal.

## IV.   PLAINTIFF CANNOT PLEAD FRAUD BASED ON STATEMENTS OUTSIDE THE OFFERING MEMORANDA.

Plaintiff seeks to allege dozens of misstatements by Samarco, BHP and Vale.  But only statements contained in the Offering Memoranda can form the basis for Plaintiff's claim of securities fraud.  Each Offering Memorandum for the Notes explicitly instructed purchasers such as Plaintiff— a "sophisticated institutional investor" (Dkt. 18 at 8)—not to rely on any other information in purchasing the Notes.   *See* Ex. 1 at ii; Ex. 2 at ii; Ex. 3 at ii ("You should only rely on the information contained in this offering memorandum.").  The Notes also required Plaintiff (as a purchaser) to acknowledge that "no person has been authorized to give any information or to make any representation concerning [Samarco] or the notes other than those as set forth in this offering memorandum."  Ex. 1 at ii-iii; Ex. 2 at ii-iii; Ex. 3 at ii-iii.

In these circumstances, Plaintiff cannot now claim that it relied on statements outside the Offering Memoranda. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3058563, at *5 (N.D. Cal. July 19, 2017) (investor

could not base claims on documents or sources other than offering memorandum where memorandum expressly instructed that only information in it could be relied upon).[4]   Plaintiff concedes that "[b]efore making a decision to purchase the Samarco Notes," it reviewed the Offering Memoranda.  SAC ¶ 29.  The alleged misstatements from outside the Offering Memoranda—including all alleged misstatements attributed to BHP and Vale—therefore are inactionable as a matter of law.

## V. PLAINTIFF FAILS TO ALLEGE ANY OMISSIONS OR MISREPRESENTATIONS BY SAMARCO.

### A. Plaintiff's Allegations Based on Samarco's Supposed Omissions Fail.

The SAC relies in large part on alleged omissions rather than affirmative misrepresentations, effectively arguing that Samarco knew of the risk that the Fundão Dam would fail but did not disclose that risk.  SAC ¶¶ 13, 309.  Plaintiff's omissions claims fail for at least two independent reasons: *first*, Samarco repeatedly disclosed in its Offering Memoranda the risks associated with its tailings dams and mining operations.  *Second*, Samarco properly disclosed its operational risks and was not required to disclose all details of its operations.

### 1. Samarco Disclosed the Well-Known Risks of Its Operations.

Samarco repeatedly disclosed that its iron ore mining business posed substantial risks. The Offering Memorandum for each set of Notes included specific and detailed risk warnings, cautioning prospective investors about the environmental, safety, and other risks associated with Samarco's operations.  The SAC fails to cite any of these disclosures because they negate Plaintiff's claims.  *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576

---

[4] *See also Harsco Corp. v. Segui*, 91 F.3d 337, 342-44 (2d Cir. 1996) (affirming dismissal of 10(b) claim, where sophisticated plaintiff disclaimed reliance on matters outside of agreement but brought 10(b) claim "principally alleging conduct that falls outside [the] boundaries [of agreement]"); *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1286-87 (D.C. Cir. 1988) (Ginsburg, J.) (affirming dismissal of Section 10(b) claim based on representations as to which reliance was disclaimed by parties' agreement).

(S.D.N.Y. 2013) (holding omissions not alleged "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain").

In each Offering Memorandum, Samarco advised investors that its mining activities involve "significant risks that even a combination of risk management, careful evaluation, experience and knowledge cannot eliminate." Ex. 1 at 12; Ex. 2 at 13; Ex. 3 at 13. Samarco further described the risk of "industrial accidents, equipment failure, unusual or unexpected geological and geotechnical conditions, [and] environmental hazards," that "could result in material damage to mineral properties, human exposure to pollution, personal injury or death, [and] environmental and natural resource damage." *Id.* Samarco also specifically warned that its "mining operations create **difficult and costly environmental challenges**," and that disposal of tailings was its "primary challenge." Ex. 1 at 26; Ex. 2 at 28; Ex. 3 at 22 (bold in original). The Offering Memoranda also included the clear warnings (in bold) that Samarco's "**mining operations are subject to risks and hazards inherent to the mining industry.**" Ex. 1 at 12; Ex. 2 at 13; Ex. 3 at 13.

Moreover, as the SAC concedes, those inherent hazards—particularly the risk of tailings dam incidents—were well known for many years before the first Note offering in 2012. The SAC quotes from a *2001* bulletin from the International Commission on Large Dams ("ICOLD") titled *Tailings Dams, Risks of Dangerous Occurrences, Lessons Learnt from Practical Experiences*, noting that failures can occur because of operational breakdowns. SAC ¶ 94. The SAC alleges that the rate of tailings dam failures from 2001 to 2011 was one "every eight months," or about three failures every two years. SAC ¶ 102. Indeed, Plaintiff states that experts have concluded that "tailings dams typically represent the most significant environmental liability associated with mining operations." *Id.* But Plaintiff does not mention that tailings

11

dams were the subject of "many publications" from **before** 2001, including ICOLD bulletins

issued in 1982, 1989, 1994, 1995, and two bulletins in 1996.  Ex. 19 at 6.  Also left out of the

SAC is the 2001 bulletin's statement that major tailings dam incidents numbered two per year **in**

**the six years from 1995 to 2001**.  *Id.*  Samarco disclosed the risks of its operations, including the

risk of substantial environmental damage, personal injury and death, and legal liability from

tailings dam failures.  The SAC admits that these risks were disclosed, and Plaintiff's omissions

claims fail as a result.  *See* Appendix A.

> 2. Samarco Had No Duty to Disclose the Granular Details of Its Business.

Plaintiff also takes issue with Samarco's statements regarding tailings disposal, arguing

that Samarco should have disclosed a three-page contract executed in 1989 with non-party S.A.

Mineração da Trindade ("SAMITRI") that permitted SAMITRI, and later Vale, to deposit

tailings at Samarco's mining complex.  SAC ¶¶ 139-56.  But Section 10(b) does "not create an

affirmative duty to disclose any and all material information."  *Kleinman v. Elan Corp.,* 706 F.3d

145, 152 (2d Cir. 2013).  An omission is actionable only when the defendant is under "a duty to

disclose the omitted facts."  *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 267 (2d Cir. 1993).

Even if the allegedly omitted information were material (which it was not), "a corporation is not

required to disclose a fact merely because a reasonable investor would very much like to know

that fact."  *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 484 (S.D.N.Y. 2009), *aff'd*, 374 F.

App'x 141 (2d Cir. 2010).  As this Court has explained, a claim that a defendant breached a duty

"solely by failing to disclose a fact, which is not related to a statement that the [defendants] did

make, does not suffice under Rule 10b-5(b)."  *Doscher v. Sobel & Co., LLC*, No. 14 Civ. 646

RMB, 2015 WL 774695, *4 (S.D.N.Y. Feb. 11, 2015) (Berman, J.).

In any event, the 1989 SAMITRI contract is immaterial as a matter of law, because it

predated *both* Vale's acquisition of SAMITRI and construction of the Fundão Dam by over ten

years.  The Fundão Dam was even designed and built "in part to receive tailings from Vale's Alegria plant."  SAC ¶ 140.  The fact that certain tailings that the dam specifically was built to contain were deposited there pursuant to a decades-old contract would not meaningfully have altered the "total mix" of information available to investors.  *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988).  Given the detailed risk disclosures made, Plaintiff's claim that more disclosure was required fails.

**B.      Plaintiff Has Not Pleaded Misrepresentations by Samarco.**

Plaintiff's misrepresentation claims against Samarco fare no better than its omission claims.  Plaintiff's primary misrepresentation claims center on statements regarding Samarco's commitment to health and safety, all of which were aspirational statements on which no reasonable investor could rely.  SAC ¶¶ 425-28; *see also id.* ¶¶ 429-34; Appendix A.  These include statements that Samarco's priorities include "[p]romoting a safe work environment that values the quality of life," that "[m]easuring and managing all advances and opportunities for improvement in community relations is a priority for Samarco," and that "[r]espect for life [is] an uncompromising value at Samarco."  SAC ¶¶ 425-27.

These types of statements of corporate values are inactionable puffery because they are "too general to cause a reasonable investor to rely upon them."  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); *see also ECA, Local 134 IBEW Joint Pension Trust,* 553 F.3d at 205-06 (holding statements regarding "highly disciplined" risk management processes designed "to preserve the integrity of the risk management process" too general to support reliance by a reasonable investor).[5]

---

[5] Several of Samarco's allegedly misleading statements reflect forward-looking statements specifically subject to cautionary language and express warnings of significant risks, *see* SAC ¶¶ 264, 266, 273-74, 276, 283, 402, which are protected under the "bespeaks caution" doctrine.  *See* VIII.B, pp. 22-23.

## VI.    VALE AND BHP CANNOT BE HELD LIABLE FOR SAMARCO'S ALLEGED MISSTATEMENTS OR OMISSIONS.

Plaintiff asserts that statements "made by Samarco" should be attributed to Vale and to BHP because "they were involved in drafting, producing, reviewing and/or disseminating" those statements.  SAC ¶ 51.  This assertion fails as Plaintiff has not alleged that Vale or BHP had ultimate authority over those statements.

Under *Janus Capital Grp., Inc. v. First Derivative Traders*, only the "maker" of a statement can be liable for misrepresentations under Section 10(b); the maker of a statement is the entity "with *ultimate authority* over the statement, including its content and whether and how to communicate it."  564 U.S. 135, 142-43 (2011) (emphasis added); *see also Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 576 (S.D.N.Y. 2012) (holding allegations that defendant "has the power to influence the party who does in fact make the misstatement" insufficient to establish "ultimate authority" under *Janus*).  Where a statement is attributed to a particular party, that "is strong evidence that a statement was made by—and only by—the party to whom it is attributed."  *Janus*, 564 U.S. at 142-43.  The SAC does not allege that Vale or BHP Brasil, Samarco's shareholders—much less the other BHP Defendants—had "ultimate authority" over Samarco's alleged misstatements, instead attributing them to Samarco.[6]  This is "strong evidence" that Samarco, not its shareholders, made the alleged misstatements.  *Id*.

Plaintiff also does not allege that Vale and BHP had control over the "content and whether and how to communicate" the alleged misstatements.  Instead, the SAC alleges in

---

[6] *See* SAC at 1 (referring to "public statements and representations *made by Samarco*" and "offering memoranda, sustainability reports, management reports and financial statements *issued by Samarco*" (emphasis added)*; see also id.* ¶ 86 ("Samarco's management was responsible for the preparation and fair presentation of the company's management reports and financial statements . . . [and] the information included in the Sustainability Reports"); *see also id.* ¶ 270 ("On June 5, 2013, *Samarco published* its 2012 Annual Sustainability Report" (emphasis added)).

conclusory fashion that Vale and BHP "control[led]" Samarco through appointees to Samarco's Board of Directors and that those appointees "were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements" and had and exercised the ability to control the nature and content of those statements.  SAC ¶¶ 50-51.  These sparse allegations include no *facts* indicating that any shareholder representative controlled the drafting and release of any of Samarco's 110 alleged misstatements.  Such vague, non-specific pleadings are inadequate to show that Vale and BHP had "ultimate control" over Samarco's alleged misstatements and omissions.  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 137-38 (S.D.N.Y. 2013) (dismissing claim that parent company controlled alleged misstatements by subsidiary for failure to allege that parent had ultimate authority over alleged misstatements).  Likewise, the SAC's allegations that the Samarco Board had "power" over "strategic" aspects of Samarco, SAC ¶¶ 59-64, do not address control over Samarco's disclosures and are inadequate to satisfy the "ultimate control" test.  *McIntire* at 137-38 (allegations that parent made decisions for subsidiary "on major matters" held insufficient).

## VII.   BHP DID NOT MAKE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS.

### A.   Many of BHP's Alleged Misstatements Do Not Pertain to Samarco.

The SAC advances the same flawed theory as the Amended Complaint: BHP's public statements misled the market about the state of one dam at Samarco, a single non-operated joint venture in BHP's portfolio.  But a majority of BHP's alleged misstatements in the SAC do not pertain to Samarco at all and thus cannot be rendered false by supposedly contrary facts about Samarco.  SAC ¶¶ 331-33, 364, 413-23, 440-447, 449, 461-64; *see also* Appendix B.

Twenty-four of the alleged misstatements were made in BHP's Sustainability Reports and Annual Reports, which explicitly *disclaim* application to Samarco.  SAC ¶¶ 331-33, 364,

413-23, 441-43, 447, 449, 461-64; *see also* Appendix B.  BHP's Sustainability Reports identify

Samarco as a "*[n]on-operated* joint venture" and state that the reports only pertain to assets

"*operated by BHP Billiton*."  Ex. 7 at i, iii; Ex. 8 at i, iii; Ex. 9 at ii, iii.  And the Annual Reports

make clear that "the terms BHP Billiton, the Company and the Group refer to the combined

group, including both BHP Billiton Limited and subsidiary companies and BHP Billiton Plc and

subsidiary companies."  Ex. 4 at 353; Ex. 5 at 390; Ex. 6 at i.  The list of "[s]ignificant

subsidiaries" in the Annual Reports does not include Samarco; instead, Samarco is listed

separately among BHP's "jointly controlled entities" or its "equity accounted investments."  Ex.

4 at F-68 to F-70; Ex. 5 at F-65 to F-68; Ex. 6 at F-76 to F-78.  While Judge Buchwald's Order

in *In re BHP Billiton Ltd. Securities Litigation*, No. 16-cv-1445 (S.D.N.Y. Aug. 28, 2017)

("*BHP*") (at 31-33) concluded that statements in BHP's Annual Reports might be read to

encompass Samarco, no reasonable investor could have done so.  Rather, as Judge Woods held in

the *Vale* Order, investors "can be expected to read [] reports as drafted[.]"  *In re Vale S.A. Sec.

Litig.*, No. 15 Civ. 9539 (GHW), 2017 WL 1102666, at *23 (S.D.N.Y. Mar. 23, 2017)

(statements in Vale's annual reports "could not mislead the market regarding the actions and

omissions of Samarco," because they "expressly limited their statements to Vale and its

subsidiaries").

      The other four of BHP's alleged misstatements that do not pertain to Samarco address

BHP's commitment to safety and controlling costs.  SAC ¶¶ 440, 444-446; Appendix B.

Plaintiff has not adequately alleged that these statements pertain to Samarco.[7]

---

[7]  Several of the documents in which these four alleged misstatements appear clearly reference
Samarco in other sections—meaning that the alleged misstatements in those documents make no
mention of Samarco because they do not relate to Samarco.  *See, e.g.,* Ex. 10 at 8 (noting that
"[i]ncluding Samarco, our share of iron ore production is expected to rise"); Ex. 11 at 10 (noting
that a graphic showing BHP's iron ore export growth does not include Samarco).

**B.      BHP's Generalized Statements about Safety, Risk Management, and Compliance Are Not Actionable.**

Even if the 24 alleged misstatements related to Samarco, they should be dismissed because they are quintessential examples of non-specific, aspirational statements that are not actionable.[8]  Judge Buchwald considered identical statements and determined that those regarding BHP's commitment to safety and the adequacy of its risk management protocols were "simply too general and/or aspirational to be actionable," *BHP* at 27, and that all alleged misstatements regarding BHP's commitment to compliance with local laws and regulations were "too aspirational and general [to] be actionable," *id*. at 34-35.

Only three of the misstatements alleged here were sustained by Judge Buchwald: "[w]hile eliminating hazards through engineering or physical controls has a strong place in safety management, we understand it is only part of the solution," SAC ¶ 420; "[o]ur overriding commitment is to ensuring the safety of our people, and respecting our environment and the communities in which we work," SAC ¶ 442; and "[t]he health and safety of our people and of the broader communities in which we operate is central to every aspect of our business," SAC ¶ 447.  BHP respectfully submits that these purported misstatements are also "too general to cause a reasonable investor to rely upon them."  *City of Pontiac*, 752 F.3d at 183.  Indeed, Judge Woods dismissed statements nearly identical to these three purported misstatements as inactionable puffery in *Vale*.[9]

---

[8] The alleged BHP misstatements include "[w]e are focused on identifying and managing our material risks to protect our people and improve the safety of our operations," "[s]afety is a core value for BHP," and "[w]e are committed to compliance with the laws and regulations of the countries in which we operate," SAC ¶¶ 418, 440, 462-63

[9] *Compare, e.g.*, SAC ¶ 442 ("Our overriding commitment is to ensuring the safety of our people, and respecting our environment and the communities in which we work.  This commitment informs everything we do and influences every aspect of our work.") *with In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *8-9, 21-22 (dismissing statements regarding Vale's commitment to health and safety, such as that Vale is "striving to build a company of solid

C.     **BHP's Statements Regarding Past Production Levels, Cost Reductions, Tailings Disposal and the Toxicity of the Tailings Are Neither False Nor Adequately Pled as Misstatements.**

Plaintiff also alleges that six statements by BHP about Samarco's P4P Project and production levels, and nine statements regarding BHP's tailings disposal and past cost reductions, were misleading.  SAC ¶¶ 303-307, 331-33, 359-61, 363, 365, 376.  These statements include: the P4P Project "has expanded Samarco's iron ore pellet production capacity from 22.3 Mtpa to 30.5 Mtpa"; and "[c]ontrollable cash costs [were] reduced by US $2.7 billion in FY13." SAC ¶¶ 304, 360.  Plaintiff does not allege that these statements were false, and therefore no fraud claim can be sustained.  *See Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38-39 (2d Cir. 2012) ("[A] violation of federal securities law[s] cannot be premised upon a company's disclosure of accurate historical data.").[10]  Judge Buchwald reached the same conclusion in the *BHP* Order, dismissing all alleged misstatements regarding Samarco's production capacity and projected performance.  *BHP* at 35-37, 41-43.

Likewise, Plaintiff alleges that BHP misled investors by describing the *tailings* released from the Fundão Dam as "clay and silt," and stating that third-party testing of the Rio Doce on November 14, 2015 "indicate[d] that concentrations of metals" were not significantly different

---

values," including "respect [for] the environment [and] genuine care for the safety and well-being of fellow colleagues and respect [for] the communities in which our company operates").

[10]  Four of BHP's allegedly misleading statements relate to BHP's objectives with regard to productivity and cost reductions.  SAC ¶¶ 303, 359-61, 364.  Those are forward-looking statements protected by the PSLRA safe harbor, 15 U.S.C. § 78u-5(c), and the "bespeaks caution" doctrine, *see infra* Section VIII.B, pp. 22-23.  Each of the Form 20-F reports and investor presentations in which these statements appear includes a warning that it contains "forward looking statements," with meaningful cautionary language, including warnings that the forward looking statements "are not guarantees or predictions of future performance"; "[e]nvironmental incidents," including "uncontrolled tailings containment breaches," "have the potential to create a material impact"; and Samarco is an "[i]ndependent joint venture" or "[n]on-operated joint venture" and "non-controlled" or "non-operated assets may not comply with our management and operating standards."  Ex. 4 at 3, 19-20, 25-26; *see also* Ex. 6 at 6, 8-9, 28-29; Ex. 12 at 2.

from results in 2010.  SAC ¶ 377.  Plaintiff fails, however, to specify how these statements were allegedly false.  Plaintiff alleges that a UN Report, tests conducted by Brazilian officials, and the statement of a Vale executive contradict BHP's statement regarding the *contents of the tailings* (*id.* ¶¶ 380-82), but the SAC shows that these allegedly contradictory sources refer to testing of the *water of the Rio Doce* (*id.* ¶¶ 369, 383-84, 484), and do not contradict BHP's statement about the tailings themselves.  Further, Plaintiff does not allege a single fact undermining BHP's statement that results from testing of the Rio Doce on November 14, 2015 did not "significantly differ" from test results produced in 2010 – among other things, Plaintiff alleges nothing at all about what the 2010 tests found or how, if at all, they differed from the November 2015 testing.[11] Plaintiff also ignores BHP's subsequent disclosures, which confirm that the tailings were non-toxic in nature and BHP's statements were true.[12]

### D.    Plaintiff Does Not Allege Any Actionable Omissions by BHP.

Plaintiff contends that many of BHP's statements discussed above are actionable because they allegedly omitted material information.  Plaintiff is apparently referring to the alleged "history of serious problems" at the Fundão Dam and alleged "inadequa[cies]" in Samarco's emergency action plan.  *See* SAC ¶¶ 157-75 & 221-27.  BHP did not omit this information or any other information it was obliged to disclose.  But "an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts," *In re*

---

[11] Judge Buchwald held that the *BHP* plaintiffs adequately alleged that two statements made by BHP's CEO, Andrew Mackenzie, regarding the toxicity of tailings released by the Fundão dam's collapse were false or misleading, *BHP* at 40-41, but nonetheless dismissed those allegations because the plaintiffs failed to plead scienter.  *Id.* at 60.  Defendants respectfully submit that Plaintiff here has failed adequately to allege that BHP's statements regarding the nature of the tailings released from the dam were false or misleading.  But, in any event, Plaintiff, too, has failed to plead scienter as to these statements for the same reason Judge Buchwald identified.

[12] *See, e.g.*, Ex. 20 at 6 ("Results indicate that the water quality of the river, in terms of metals of environmental concern, is similar to that determined by studies conducted in 2010 by the Brazilian Geological Service and National Water Agency, and *support the earlier determination that the tailings released into the river system are not toxic*.") (emphasis added).

*Time Warner*, 9 F.3d at 267, and by disclosing information about Samarco, such as its production levels, BHP did not assume obligations to disclose alleged details regarding the many aspects of Samarco's operations, including those that might affect or be affected by production levels. Further, such highly specific information appears material only with the benefit of post-accident hindsight, and courts regularly reject attempts to plead securities fraud on this basis. *See supra* at Section III, p. 7 (discussing *Union Carbide* and *Foley* v. *Transocean Ltd.*).

*Second*, as Plaintiff admits, *see* SAC ¶¶ 90-105, the allegedly omitted risks were well known. For example, BHP's Annual Reports warned that "tailings containment breaches" "have the potential to lead to material adverse impacts on our operations." Ex. 5 at 29; Ex. 6 at 29; *see also* Ex. 4 at 20. Plaintiff cannot allege omissions "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain." *Bank of Am.*, 980 F. Supp. 2d at 576.

## VIII. VALE DID NOT MAKE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS.

The Court need not spend too much time considering Plaintiff's allegations of statements and omissions by Vale, as Judge Woods already has concluded that many of them do not support federal securities claims. *See In re Vale S.A. Sec. Litig.*, 2017 WL 1102666 (granting in large part Vale's motion to dismiss securities fraud claims arising out of Fundão Dam accident). For example, Judge Woods rejected claims *identical* to those now asserted by Plaintiff concerning "cost and capital expenditure reductions" (SAC ¶¶ 347-58), concluding that "[no] reasonable investor would have been misled by Defendants' omission … [of] the precise ways in which cost reductions would be implemented." *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666 at 21; *see also id.* at 21 (further noting that "the federal securities laws do not require a company to accuse itself of wrongdoing") (citations omitted). Judge Woods similarly dismissed all claims – again,

20

identical to those asserted here – based on statements concerning Vale's "commitment to health and safety."  SAC ¶¶ 435-39; *id.* at 22 (concluding that challenged statements were "aspirational generalizations" that are too general "to cause a reasonable investor to rely upon them" and instead are inactionable puffery) (citation and internal quotation marks omitted).

### A.     Plaintiff Bases Its Claims on Statements by Vale that Indisputably Were True, And Did Not Require Further Disclosures.

Plaintiff also asserts claims against Vale on unrelated statements concerning:  (i) the "P4P Project" (a project to increase "the iron ore production capacity of Samarco") (SAC ¶¶ 6, 300-02); (ii) tailings waste disposal procedures (SAC ¶¶ 324-30); and (iii) the chemical composition of the released mudflows (SAC ¶¶ 374-75).  The Court should dismiss these claims because the SAC does not plausibly allege that the statements were false and because Vale had no duty to disclose any purportedly omitted facts.  *See* Appendix C.

The "P4P" excerpts, for example, merely reported the undisputed "nominal capacity" of Samarco's newly constructed fourth pellet plant.[13]  And the unrelated statements regarding *Vale's* tailings waste disposal procedures did not mention the Fundão Dam at all – which is not surprising, as such statements only address *Vale's* general mining practices, not those of Samarco, a non-operated joint venture.  As Judge Woods held, these statements and others that Plaintiff pulls from Vale's annual reports (*see, e.g.*, ¶¶ 410, 412) "cannot form the basis of liability," because they "clearly distinguish between [Vale's] subsidiaries and its joint ventures." *In re Vale S.A. Securities Litig.*, 2017 WL 1102666, at *23.  Similarly, one of the two challenged statements concerning the "toxicity" of the mudflows simply confirmed that Vale "already [has]

---

[13]  *See* Ex. 13 at 29; Ex. 14 at 28; Ex. 15 at 29.

provided specialists in the areas of health, safety, environment and geotechnics to Samarco and are working with them" – *a fact that Plaintiff does not even contest*.[14]

At bottom, Plaintiff contends that all of the foregoing statements were misleading because they did not also disclose the risks of a potential accident at the Fundão Dam. SAC ¶ 309. But "an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *In re Time Warner,* 9 F.3d at 267. Here, Plaintiff cannot credibly claim that the foregoing general – and true – statements implied anything about the likelihood of an accident at the Fundão Dam, which was not owned or operated by Vale.

### B. Vale's Risk-Management Statements Were Non-Actionable Forward-Looking Statements Unrelated to Samarco.

Plaintiff also cites various general risk-management statements by Vale that do not mention Samarco, let alone the Fundão Dam, as misleading because they did not disclose the potential for a dam accident. SAC ¶¶ 408-09, 411. Many of those statements describe Vale's intentions and purposes and are not statements of material fact upon which a reasonable investor would rely. SAC ¶¶ 458-60. In addition, and for the reasons stated above, these claims fail because the statements are forward-looking and no reasonable investor would rely on them, particularly in light of Vale's robust and repeated warnings about the very risks realized here.

---

[14] SAC ¶ 374. The second alleged "toxicity" misstatement appeared on Vale's website, and noted that: "The waste at the dam sites is inert, it has no toxic components . . .", according to the results of a November 8, 2015 "'analysis requested by Samarco.'" SAC ¶ 375; *see also* Ex. 18. Beyond Plaintiff's failure to satisfy Rule 9(b) for this statement (the SAC does not even allege when the posting was made), the Court also should reject this claim because Plaintiff never alleges that Vale knew this statement to be false when made. Instead, Plaintiff just references scientific conclusions from November 25, 2015, and a report dated November 17, 2015 (SAC ¶ 378-380), and thus fails to – because it cannot – allege that any of this information was available prior to Vale's statement. *See SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, No. 09 Civ. 5064 (RMB), 2010 WL 2473595, at *12 (S.D.N.Y. June 17, 2010) (Berman, J.), *aff'd sub nom. SRM Glob. Fund Ltd. P'ship v. Countrywide Fin. Corp.*, 448 F. App'x 116 (2d Cir. 2011). In short, Plaintiff's quintessential "fraud by hindsight" allegation does not support its claims here. *See id.*

Under the PSLRA's safe harbor provision, a company cannot be held liable for forward-looking statements – including "plans and objectives of management for future operations" – where they are accompanied by meaningful cautionary language.  15 U.S.C. §§ 78u-5(c), (i)(1)(B) (2016). Similarly, the judicially created "bespeaks caution" doctrine precludes liability based on forward-looking statements "accompanied by sufficient cautionary language," as "no reasonable investor could [find such a] statement materially misleading."  *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010).

In addition to warning of "breach[es] of operating and maintenance standards" "involving [] mines" that could cause the destruction of "production facilities, personal injury or death, [or] environmental damage,"[15] Vale also repeatedly warned investors that:

> *[J]oint venture partners [such as Samarco] may not fully comply with our standards, controls and procedures, including our health, safety, environment and community standards.  Failure by any of our partners to adopt standards, controls and procedures equivalent to ours could lead to … environmental, health and safety incidents or accidents [such as the Fundão Dam collapse], which could adversely affect our results and reputation.*[16]

Plaintiff has not pled any actionable misstatements or omissions by Vale.

## IX.    PLAINTIFF HAS NOT PLEADED SCIENTER.

The PSLRA requires dismissal of complaints that fail to "state with particularity facts giving rise to a *strong inference* that the defendant acted" with scienter.  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added).  To meet this standard, Plaintiff must show that one or more individuals made statements while they had "a mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs, Inc.*, 551 U.S. at 319.  Plaintiff may not simply "allege facts from which an inference of scienter rationally *could* be drawn;" instead it must allege facts

---

[15]  Ex. 13 at 5-6; Ex. 14 at 5-6; Ex. 15 at 5-6.
[16]  Ex. 14 at 5; Ex. 15 at 6; *see also* Ex. 13 at 10; Ex. 14 at 10; Ex. 15 at 11 ("Our governance and compliance processes may fail to prevent regulatory penalties and reputational harm.").

giving rise to a "*powerful or cogent*—inference" of scienter, one that is "at least as compelling as any opposing inference[.]"  *Id.* at 323-24 (emphases supplied).  This stringent scienter standard can be met only by pleading specific facts (1) showing both the motive and opportunity to commit fraud or (2) "constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Commc'ns,* 493 F.3d at 99.

### A.    Plaintiff Has Failed To Allege Scienter of Samarco.

Plaintiff does not allege that any Samarco executive had any motive to commit fraud other than the general motive of continuing Samarco's business.  It is well-settled that such general corporate motives do not suffice; "instead, plaintiffs must assert a concrete and personal benefit" to the individuals who allegedly had scienter.  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2001).  Plaintiff has not met and cannot meet this "motive and opportunity" prong.

Plaintiff is thus left to try to show strong circumstantial evidence of conscious misbehavior or recklessness.  But Plaintiff also fails to do that.  Plaintiff's primary allegations of scienter consist of descriptions of meetings of Samarco's Board of Directors, Operations Committee, and Dams Committee and asserting the conclusion that because Samarco did not conduct its operations the way Plaintiff now asserts it should have, Samarco's executives must have consciously or recklessly acted improperly.  For example, Plaintiff notes that Samarco did not follow every recommendation made by the Independent Tailings Review Board ("ITRB") and instead implemented alternative solutions to address the safety of the Fundão Dam.  *See, e.g.*, SAC ¶¶ 197, 219(a); *see also, e.g.*, *id.* ¶¶ 490-583.  Differences of opinion regarding the details of a company's operations do not provide a compelling inference of scienter; instead they reflect the business reality that management must use limited resources to address safety issues while also seeking to maximize productivity and profits.  *See In re Lululemon Sec. Litig.*, 14 F.

Supp. 3d 553, 581-86 (S.D.N.Y. 2014) (allegations regarding faulty quality control and testing, among others, did not support a strong inference of scienter).

Plaintiff's failure to allege scienter is particularly notable in its allegations that Samarco misrepresented its compliance with Brazilian laws and regulations.  SAC ¶¶ 451-57, 465-67 Plaintiff does not allege that anyone at Samarco knew or had any reason to believe that the company, licensed and regulated by multiple states and other governmental agencies, was supposedly not in compliance with applicable law.  Indeed, in alleging why Samarco's statements regarding its compliance were purportedly false, Plaintiff relies on hearsay statements made after the Fundão Dam failed, such as a regulator's comment that Samarco would need to make certain changes before it could resume operations.  SAC ¶ 466.  That comment speaks to Samarco's technical ability to operate in the wake of the accident, not the mental state of anyone at Samarco months and years previously.  Plaintiff's allegations of scienter do not meet Plaintiff's burden, they simply question in hindsight Samarco's reasoned business decisions.

### B.      Plaintiff Has Failed To Allege Scienter of BHP.

The SAC does not adequately plead scienter as to BHP.  Indeed, the SAC fails to identify any individual whose scienter can be imputed to BHP, instead alleging that scienter can be imputed from unspecified "high-level employees and/or Board members of Samarco." SAC ¶ 596.  Even assuming that this refers to the 12 alleged BHP Brasil attendees at Samarco meetings (*see, e.g., id.* ¶¶ 72, 80, 131-33, 136, 150, 176, 216), the SAC fails to state with particularity facts giving rise to a strong inference that any attendee acted with scienter.[17]  The SAC alleges that the

---

[17] Further, the SAC only alleges which BHP Defendant employed four of the twelve alleged attendees.  *Id.* SAC ¶¶ 43-44, 46, 48 (James Wilson, Jeffrey Zweig, and Margaret Beck alleged to have been employees of BHP Billiton Ltd., Sérgio Consoli Fernandes alleged to have been employee of "BHP Billiton").  The knowledge of employees of BHP Brasil is not attributable to BHP Billiton Limited or BHP Billiton PLC so allegations of knowledge of BHP Brasil employees are wholly inadequate to plead scienter against those BHP entities.

Board discussed tailings dams, SAC ¶¶ 114-138, but says nothing about whether BHP Brasil's appointees received information in those discussions that contradicted BHP's alleged misstatements.  Not only does the SAC fail to provide adequate detail about what aspects of the tailings dams were discussed – concerns related to cost, capacity, safety, or something else – but it also alleges that the Board "frequently discussed remediating" issues with the Fundão Dam, including during meetings at which allegedly contradictory information was discussed.   SAC ¶¶ 7, 114-24, 130-38, 180-84.

Plaintiff's allegations fail to include the detail necessary to show a strong inference of scienter.  *See, e.g.*, *Sinay v. CNOOC Ltd.*, No. 12 Civ. 1513 (KBF), 2013 WL 1890291, at *8-9 (S.D.N.Y. May 6, 2013) (dismissing allegations of scienter for lack of particularly regarding parent company's appointees to subsidiary's joint management committee).  To the contrary, the far more compelling inference from Plaintiff's allegations is that the Samarco Board "believed that they were taking adequate risk management and cautionary measures," and "subjectively believed" that the potential for an accident "would be substantially less than" what occurred, rather than that they engaged in intentional fraud.  *In re Societe Generale Sec. Litig.*, No. 8 Civ. 2495 (RMB), 2010 WL 3910286, at *7 (S.D.N.Y. Sept. 29, 2010) (granting motion to dismiss).[18]

---

[18] The *BHP* Order does not compel a different conclusion.  That Order held that the plaintiffs had failed to plead scienter as to individual defendants and had adequately pleaded it as to BHP.  But the conclusion as to BHP relied on post-accident reports, including the alleged conclusions of a Brazilian police investigation, and the alleged post-accident statement that the Samarco Board rejected a proposal in 2009 to implement a new emergency action plan "because it was too expensive."  *BHP* at 52-53.  Defendants respectfully submit that these allegations fail to identify any facts regarding the Fundão Dam that employees of Defendants received at the time the challenged statements were made, and, without such detail, cannot support a strong inference of scienter.  *See Foley*, 861 F. Supp. 2d at 215 (dismissing scienter allegations based on "post-hoc assessments" where there was no allegation that contemporaneous information was available to executives and presented so as to alert that executive of the existence of the alleged problems).

1.      Plaintiff Cannot Show Scienter Regarding the Pristino Report.

The SAC fails to allege that BHP's Chairman of the Board Jac Nasser's statement that "we looked at" the so-called "Pristino Report" "back then" shows scienter.  SAC ¶ 186.  This allegation fails for two reasons.  *First*, this statement says nothing about who received the Report or when, and the SAC alleges no such details.[19]  Further, as noted above, the SAC concedes that the Minas Gerais environmental regulator "renewed Samarco's license for the Fundão dam."  *Id.* ¶ 184.  The Pristino Report thus did not indicate to Samarco's environmental regulator that a failure in the Fundão Dam was imminent, and Plaintiff does not explain why anyone at BHP should have gleaned from the Pristino Report something that the Brazilian regulator did not.

*Second*, Plaintiff admits that the Pristino Report "was published on the website of the State of Minas Gerais' environmental regulator."  *Id.* ¶ 181.  As Judge Buchwald held, Plaintiff cannot allege scienter because the Pristino Report "was publicly available, reducing any inference of scienter that could otherwise be drawn therefrom."  *BHP* Order at 56*; see also Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) (inference of scienter from publicly available red flags not as cogent and compelling as inference of nonfraudulent intent).

2.      Plaintiff Has Not Pleaded Scienter Regarding the Tailings Mudflow.

The SAC does not allege that BHP received any fact contrary to its alleged misstatement regarding the nature of the tailings mudflow prior to making that statement.  All of the sources that Plaintiff alleges contradict this alleged misstatement post-date it.  SAC ¶¶ 378-84.  As a result, and as Judge Buchwald held in the *BHP* Order (*see* n.4, *supra*), Plaintiff has failed to plead scienter with regard to BHP's alleged statement regarding the nature of the tailings

---

[19] As the Chairman of BHP, Mr. Nasser regularly said "we" and similar pronouns to refer to actions taken by other employees of BHP in which he was not directly involved.  *See, e.g.*, Ex. 16 at 7 ("*Our* first ever export sale was to China.  It was 123 years ago and *we* shipped 52 tons of lead from Port Pirie.") (emphases added).

mudflow.  *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009)

(plaintiffs must allege "that [1] *specific* contradictory information was available to the defendants

[2] *at the same time* they made their [allegedly] misleading statements" (alterations and

emphases in original)).   That BHP allegedly relied on testing as the basis for its statement (SAC

¶ 377) provides further support for the inference that it acted without scienter.

3.    Post-Incident Events Do Not Support a Strong Inference of Scienter.

Plaintiff alleges that "the resignation and/or termination of [James] Wilson" in February

2016 "demonstrates Defendants' knowledge that the companies lacked adequate safety practices

or, at a minimum, recklessness in not ensuring that adequate personnel were overseeing the

companies' safety practices."  SAC ¶ 588.  Plaintiff does not, however, plead facts to link Mr.

Wilson's resignation, which was pursuant to a company-wide reorganization (Ex. 17 at 2), to any

"knowledge" about "safety practices."  Without such details, Plaintiff's bald allegation

necessarily fails to support a strong inference of scienter.  *In re UBS AG Sec. Litig.*, 2012 WL

4471265, at *18 (S.D.N.Y. Sept. 28, 2012) (without specific facts linking resignation to alleged

fraud, such allegations do not raise a strong inference of scienter).

Plaintiff's allegation that "a finding of scienter" is supported by criminal charges brought

by Brazilian public prosecutors against six Samarco employees and the members of Samarco's

Board of Directors (SAC ¶¶ 260, 589), the alleged findings of investigations by the Brazilian

federal and state police (*id.* ¶¶ 590-92), and "sworn testimony to Brazilian prosecutors" from at

least eleven "witnesses" in Brazilian legal proceedings (*id.* ¶ 52) is similarly unavailing.  Not one

of these supposed sources alleges with any particularity any facts received at a relevant time by

BHP's employees regarding the Fundão Dam or otherwise confirms what BHP knew or should

have known at the time the challenged statements were made.  Without such detail, these

allegations cannot support a strong inference of scienter. *Foley*, 861 F. Supp. 2d at 215 (dismissing scienter allegations based on "post-hoc assessments").

### C.   Plaintiff Has Failed To Show Scienter Of Vale.

Plaintiff's "amalgam of suggestions" that Vale was aware of facts suggesting that its public statements regarding internal risk controls and subprime holdings were false in light of the Fundão Dam accident do not show scienter. Plaintiff alleges only that Samarco board members periodically reviewed operational information about the Dam. Plaintiff attempts to impute the knowledge of Samarco's board to Vale without alleging the channels of communication, or why Vale would be expected to know or monitor the daily operations of and improvements done to one dam operated by a non-operated joint venture that contributes to only 3% of Vale's worldwide operations. Ex. 15 at 27. Securities fraud claims are evaluated with practical judgments about whether, accepting the facts alleged, "it is at least as likely as not that [D]efendants acted with scienter." *In re Societe Generale Sec. Litig.,* 2010 WL 3910286, at *7 (quotation marks omitted). As this Court has held, where it is at least as likely as not that Defendants "believed that they were taking adequate risk management and cautionary measures," and "subjectively believed" that the potential for an accident "would be substantially less than" what occurred, there has been no showing of scienter. *Id.*

### X.   PLAINTIFF'S ALLEGATIONS REGARDING POST-ACCIDENT STATEMENTS MUST BE DISMISSED FOR FAILURE TO SHOW LOSS CAUSATION.

Plaintiff cannot show loss causation from statements *after* the Fundão Dam failed that the material released was not toxic. These statements were allegedly made on November 9, 10, 12, 13, 19, 25, and 26, 2015. SAC ¶¶ 367-77. Plaintiff alleges that "[s]oon after" these statements, contradictory statements were made by the U.N. High Commissioner for Human Rights and, on November 17, 2015, a report was issued that contradicted the statements. SAC ¶ 378. For it to

assert a securities fraud claim on these post-accident statements, Plaintiff must have transacted in the Notes in the eight days between the statements and the alleged corrective disclosures.  But it did not (SAC Ex. A), and thus its claims based on these statements cannot stand.

Plaintiff also fails to allege that these statements caused any loss.  Plaintiff's loss causation theory is based on negative market reaction after purported "corrective disclosures."  But Plaintiff fails to allege market reaction for disclosures purportedly correcting statements regarding the tailings outflow.  Plaintiff argues that the price of the Notes fell in reaction to reports of the Dam failing, the loss of life and injuries, the placing of Samarco's credit rating on CreditWatch by S&P, Samarco's "total suspension of activities," and the high cost of remediation.  SAC ¶¶ 451-83.  Plaintiff's mention of a November 27, 2015 purported statement by a Vale executive that there were toxic elements in the Doce River does not show loss causation, because, according to Plaintiff's own allegations, that information had been disclosed to the purportedly efficient market 10 days earlier.  For these reasons, Plaintiff's allegations of post-accident statements cannot support a securities fraud claim.

## XI.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A).

Because Plaintiff has failed to allege a primary federal securities law claim, it "cannot succeed on a Section 20(a) controlling-person-liability claim."  *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp. 2d 522, 527 (S.D.N.Y. 2012).  Plaintiff has failed to make out a Section 10(b) violation, and thus its Section 20(a) claim should also be dismissed.

## XII.   THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED.

Courts customarily dismiss state-law claims when dismissing the federal claims on which original jurisdiction was based.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).  The Court should follow the well-established law and dismiss Plaintiff's common-law

claims, because, as shown above, Plaintiff has no federal claims.  The common law claims also

fail because the SAC does not – and cannot – plead the requisite elements.

A.     **Plaintiff Fails to State a Claim for Common Law Fraud.**

Plaintiff's common law fraud claims, which are based on the exact same facts as the

federal securities law claims, fail on the merits.  Common law fraud claims require a

misrepresentation of fact, made with scienter, "which is offered to deceive and to induce the

other party to act upon it, and which causes injury."  *SRM Glob. Fund L.P.*, 2010 WL 2473595 at

*6 (citation omitted).  Reasonable and actual reliance are required elements of New York

common law fraud claims.  *Redtail Leasing, Inc. v. Bellezza,* No. 95 Civ. 5191 (JFK), 1997 WL

603496, *6-7 (S.D.N.Y. Sept. 30, 1997).  Plaintiff's attempt to identify a material false

representation or omission fails for all of the reasons identified above.  Plaintiff's common law

claims fail for the additional reason that Plaintiff fails to allege actual reliance.  Plaintiff alleges

only fraud on the market, *see* SAC ¶¶ 604-08, dooming Plaintiff's fraud claims.

B.     **Plaintiff Does Not Adequately Plead Aiding and Abetting Fraud.**

Plaintiff's aiding and abetting fraud claims require an underlying fraud, and thus fail for

the same reasons as the fraud claim.  In addition, aiding and abetting fraud "requires a primary

violation, actual knowledge on the part of the aider and abettor, and substantial assistance."

*S.E.C. v. Lee*, 720 F. Supp. 2d 305, 329 (S.D.N.Y. 2010).  Plaintiff states in only conclusory

terms that each Defendant knew the others' statements were false, without alleging how each

Defendant was even aware of the statements made by the other Defendants, much less that each

of the Defendants "substantially assisted" the other in any fraud.  SAC ¶¶ 632-34.

C.     **Plaintiff Fails to State a Claim for Negligent Misrepresentation.**

The negligent misrepresentation claim also fails on numerous grounds.  To allege a claim

of negligent misrepresentation, Plaintiff must allege (1) a duty to give correct information arising

from "a special relationship"; (2) a knowing false representation; (3) defendant's knowledge that the information was "desired by the plaintiff" and that the plaintiff intended to rely and act upon it; and (4) reasonable reliance.  *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 283-84 (E.D.N.Y. 2002).  Plaintiff's negligent misrepresentation claim fails because it has not identified false representations and has failed to allege reasonable reliance.

Plaintiff also fails to establish a special relationship with Defendants.  That relationship must arise out of "actual privity of contract" or "a relationship so close as to approach that of privity."  *Id*. at 284 (citation omitted).  To meet the near privity requirement, Plaintiff must show: (1) the defendant was aware that its representation would be used for a particular purpose; (2) the defendant intended that a known party or parties would rely thereon in furtherance of that purpose; and (3) there was some conduct on the part of the defendant linking it to that party or parties, showing defendant's understanding of the parties' reliance.  *Credit All. Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 551 (1985).

BHP and Vale certainly had no privity with *Samarco's* bondholders.  Plaintiff does not allege a contractual or other relationship, much less anything approaching privity.  Plaintiff fares no better with respect to Samarco.  Plaintiff fails to allege that it was a party known to Samarco when it invested, and the offering materials for the Notes were not directed to any investor and included warnings and disclaimers instructing investors and purchasers to consult independent counsel.  *See, e.g.*, Ex. 2 at ii-iv.

## CONCLUSION

Plaintiff's claims should all be dismissed with prejudice.

Dated:   May 21, 2018
         New York, New York

Respectfully submitted,

  /s/ Mark S. Cohen
Mark S. Cohen
Nathaniel P. T. Read
Joanna K. Chan
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, NY 10022
(212) 957-7600
mcohen@cohengresser.com
nread@cohengresser.com
jchan@cohengresser.com

*Attorneys for Defendant*
*Samarco Mineração S.A.*

  /s/ Brendan P. Cullen
Kate L. Doniger
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Phone:  (212) 558-1000
donigerk@sullcrom.com

Brendan P. Cullen
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Phone:  (650) 461-5650
cullenb@sullcrom.com

*Attorneys for Defendants BHP Billiton Limited,*
*BHP Billiton Plc, and BHP Billiton Brasil Ltda.*

  /s/ Mark A. Kirsch
Randy M. Mastro
Mark A. Kirsch
Christopher M. Joralemon
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Phone:  (212) 351-4000
rmastro@gibsondunn.com
mkirsch@gibsondunn.com
cjoralemon@gibsondunn.com

*Attorneys for Defendant Vale, S.A*