# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANCO SAFRA S.A. - CAYMAN ISLANDS BRANCH, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SAMARCO MINERAÇÃO S.A., BHP BILLITON LIMITED, BHP BILLITON PLC, BHP BILLITON BRASIL LTDA., and VALE S.A.,<br><br>    Defendants. | Case No. 1:16-cv-8800-RMB |

**MEMORANDUM OF LAW IN SUPPORT
OF LEAD PLAINTIFF'S MOTION FOR RECONSIDERATION
OF THE COURT'S JUNE 18, 2019 DECISION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS, TO ALTER OR AMEND THE JUDGMENT
UNDER RULE 59(e) AND FOR RELIEF UNDER RULE 60(b)**

Pursuant to Local Civil Rule 6.3 and Fed. R. Civ. P. 59(e) and 60(b), Lead Plaintiff Banco Safra S.A. ("Banco Safra") respectfully submits this memorandum of law in support of its motion for reconsideration of the Court's June 18, 2019 Decision and Order, which granted with prejudice the motion to dismiss filed by Defendants Samarco Mineração S.A., BHP Billiton Limited, BHP Billiton PLC, BHP Billiton Brasil Ltda., and Vale S.A., and to file an amended complaint.

## PRELIMINARY STATEMENT

Defendants' fraud caused hundreds of millions of dollars in damages to investors. Defendants BHP and Vale have been sued in this District in two similar securities fraud class actions, each of which survived Defendants' unsuccessful attempts to dismiss the same types of claims asserted here, *i.e.*, violations of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.[1]  This Court dismissed the Second Amended Complaint ("Complaint" or "Compl.") on *Morrison* grounds, concluding that Lead Plaintiff Banco Safra failed to plead that it acquired Samarco bonds in domestic (U.S.) transactions.[2]  In doing so, the Court questioned that a lawsuit involving a foreign plaintiff, a foreign defendant, and misconduct abroad ("a Brazilian catastrophe") can ever satisfy *Morrison*.

But *Morrison* has jettisoned the old conduct-and-effects test utilized by the Second Circuit, which lacked textual support in the Exchange Act, replacing it with a transactional test having nothing whatsoever to do with where the catastrophe occurred or where the plaintiff or defendant resided: "To determine whether the transactions at issue were 'domestic transactions,' . . . we consider 'not . . . the place where the deception originated, but [the place where] purchases and

---

[1] *See In re BHP Billiton Ltd. Sec. Litig.*, No. 16-cv-01445 (S.D.N.Y. Feb. 24, 2016): Memorandum & Order dated Aug. 29, 2017 (Dkt. 77); *In re Vale S.A. Sec. Litig.*, No. 15-cv-09539 (S.D.N.Y. Dec. 7, 2015): Memorandum Opinion & Order dated Mar. 23, 2017 (Dkt. 92).

[2] *Morrison v. Nat'l Austl. Bank Ltd.,* 561 U.S. 247 (2010).

sales of securities' occurred." *United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015) (citing *Morrison,* 561 U.S. at 266). What matters is "the time when the parties to the transaction are committed to one another . . . in the classic contractual sense, [where] there was a meeting of the minds of the parties; it marks the point at which the parties obligated themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67-68 (2d Cir. 2012) (citing *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972)). Under this standard, the Complaint plausibly alleges a domestic transaction. Compl. ¶¶ 26-27 (Dkt. 80 at 9) (alleging, *inter alia*, that all of the counterparties (*i.e.*, sellers) to the transactions in Exhibit A thereto (Dkt. 80-1) were located in the United States at the time they accepted Samarco's offer to purchase the bonds). Accordingly, Lead Plaintiff respectfully requests that the Court grant its motion for reconsideration.

Alternatively, Lead Plaintiff requests leave to amend the Complaint to make it even clearer that the transactions listed in Exhibit A are domestic. The Second Circuit counsels that leave to amend should be freely given, particularly where, as here, Plaintiff did not have an opportunity to propose a curative amendment after the Court's ruling. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (reversing district court's decision foreclosing amendment).

## ARGUMENT

### I.      The Applicable Legal Standards

A court can exercise its discretion to reconsider a ruling "to correct a clear error or prevent a manifest injustice." *Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, No. 06 Civ. 6468 (KMW) (MHD), 2009 WL 2058530, at *5 (S.D.N.Y. July 15, 2009) (granting reconsideration) (citation omitted); *see also* Fed. R. Civ. P. 59, 60. Rule 59(e) allows the Court to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Moreover, under Rule 60(b), within a

reasonable time, a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for, among other things, "mistake," "newly discovered evidence" or "any other reason that justifies relief."

Under Fed. R. Civ. P. 15(a), "leave [to amend] shall be freely given when justice so requires," even after entry of judgment. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (citations omitted). "Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted." *In re Winstar Commc'ns*, No. 01 CV 3014 (GBD), 2006 WL 473885, at *1 (S.D.N.Y. Feb. 27, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Under Fed. R. Civ. P. 15(a), "'[a] party may amend its pleading once as a matter of course before being served with a responsive pleading,' and a motion to dismiss is not considered a responsive pleading." *In re Ambac Fin. Grp., Inc.*, *Derivative Litig.,* No. 08 Civ. 854 (SHS), 2008 WL 5262428, at *1 (S.D.N.Y. Dec. 11, 2008).

Moreover, Rule 15(a)(2) declares that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman*, 371 U.S. at 182. Indeed, courts require a sufficient basis for denial of leave to amend because the purpose of pleading under the Federal Rules of Civil Procedure is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome." *Id*. at 181-82. As the United States Supreme Court recognized in *Foman*:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require be "freely given."

*Id*. at 182.

An "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *See id*. (holding that the Court of Appeals abused its discretion in refusing to permit plaintiff the right to amend). This is consistent with the Second Circuit's decisions. In *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 115 (2d Cir. 2012), the operative complaint was the third to have been considered by the district court. *Id*. at 118. After dismissal of the first amended complaint, Panther Partners moved for reconsideration and leave to replead, which the district court denied. *Id*. The Second Circuit vacated the district court's judgment denying Panther Partners' motion for reconsideration and for leave to replead, holding that "it seems to us possible that [Panther Partners] could allege additional facts that [defendant] knew . . . before filing the registration statement," and further urged the district court to "consider all possible amendments," not just "proposed amendments," in reassessing futility. *Id*.

Similarly, in *Williams*, 659 F.3d at 211, the plaintiff did not request leave to amend before the district court's order of dismissal and entry of judgment. After entry of judgment, the plaintiff "timely moved for reargument and reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Rule 6.3 of the Local Rules" and sought leave to file an amended complaint. *Id*. The district court denied the plaintiff's motion because the plaintiff failed to explain both why she had been ignorant of the facts she proposed to replead, and why "she failed to request an opportunity to replead in the first instance." *Id*. at 212 (quoting the district court's order). Abiding by the Supreme Court's seminal opinion in *Foman*, the Second Circuit held that the district court committed error by failing to consider plaintiff's proposed amendments:

> The court did not explain precisely what it meant by "in the first instance."  In the circumstances of this case, however, it can only have meant one of two things: that the plaintiff was under obligation to seek leave to replead either immediately upon answering the motion to dismiss the complaint (***without yet knowing whether the court will grant the motion, or, if so, on what ground***), or, immediately upon receipt of the court's ruling granting the motion and prior to the entry of judgment thereupon. Regardless which of the two the court had in mind, *Foman* makes unmistakably clear there is no such rule.

*Williams*, 659 F.3d at 214 (citing *Foman*, 371 U.S. 178) (emphasis added).  The Second Circuit vacated the denial of the plaintiff's motion for reconsideration and instructed the district court to consider the plaintiff's proposed amendments.  *Id*. at 214-15.

## II.     Defendants' Factual Allegations of Domestic Transactions Do Not Support Dismissal

In dismissing the Complaint for failure to plead a domestic transaction, the court erroneously evoked the old conduct-and-effects test the Supreme Court emphatically rejected in *Morrison*.[3]  Defendants argued that "Plaintiff does not allege any U.S. conduct by anyone relevant to its claims, making its claims overwhelmingly foreign and thus outside the scope of the federal securities laws."  *See* Defendants' Motion to Dismiss the Second Amended Complaint (Defs' Mot.) at 6 (Dkt. 85).  The court accepted this argument, finding that "[i]n sum, this is a case by a Brazilian/Cayman Island plaintiff against Brazilian defendants regarding Brazilian bonds and claims which relate to a Brazilian catastrophe. . . .  It is difficult to perceive a domestic transaction under *Morrison* and its Second Circuit progeny."  June 18, 2019 Decision and Order ("Order") at 3 (Dkt. 98).

In *Morrison*, the Supreme Court held that "[s]ection 10(b) [of the Securities Exchange Act] reaches the use of a manipulative or deceptive device or contrivance only in connection with the

---

[3] The Second Circuit's conduct-and-effects test asked "whether the wrongful conduct had a substantial effect in the United States or upon United States citizens" or "whether the wrongful conduct occurred in the United States."  *SEC v. Berger*, 322 F.3d 187, 192-93 (2d Cir. 2003).

purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."   561 U.S. at 273; *see also id*. at 267 ("transactions in securities listed on domestic exchanges, and domestic transactions in other securities").  *Morrison* marked a major change in the law, and the Court rejected the conduct-and-effects tests that had previously been applied in the Second Circuit.  *See Absolute Activist,* 677 F.3d at 65-66 ("In determining whether § 10(b) and Rule 10b–5 could apply extraterritorially, this Court had previously applied the so-called conduct and effects test, which focused on: '(1) whether the wrongful conduct occurred in the United States, and (2) whether the wrongful conduct had a substantial effect in the United States or upon United States citizens.' . . .  However, in *Morrison*, the Supreme Court rejected the conduct and effects test . . . .") (citation omitted); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 156 (S.D.N.Y. 2011) ("*Morrison* repudiated the 'conduct' and 'effects' tests.").

Accordingly, notwithstanding the Brazilian nexus, it is indisputable that section 10(b) and Rule 10b-5 are available to Lead Plaintiff if the bonds were purchased or sold in the United States, even if no wrongdoing had occurred in the United States:

> To determine whether the transactions at issue were "domestic transactions," under Morrison,  we consider "not . . . the place where the deception originated, but [the place where] purchases and sales of securities" occurred.  It is the "location of the *transaction* that establishes (or reflects the presumption of) the [Security Exchange] Act's inapplicability."

*Georgiou*, 777 F.3d at 135 (citations omitted; emphasis in original).

The Second Circuit interpreted *Morrison* in *Absolute Activist*.  That decision held that in order to adequately allege the existence of a domestic transaction, it is sufficient for a plaintiff to allege facts leading to the plausible inference that the parties incurred irrevocable liability within the United States or that title passed in the United States.  With respect to irrevocable liability, the

Second Circuit advised that it is sufficient to plead, for example, "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." 677 F.3d at 70. *Absolute Activist* defines irrevocable liability in the alternative, meaning a plaintiff may "allege facts leading to the plausible inference that . . . the purchaser incurred irrevocable liability within the United States to take and pay for a security, ***or*** that the seller incurred irrevocable liability within the United States to deliver a security." *Id*. at 68 (emphasis added); *see also United States v. Vilar*, 729 F.3d 62, 76 (2d Cir. 2013) (quoting *Absolute Activist* and italicizing the word "or"); *In re Petrobras Sec. Litig.*, 862 F.3d 250, 262 (2d Cir. 2017) (quoting *Absolute Activist*). Accordingly, *Morrison* is satisfied, and rule 10b-5 is available, when the seller becomes bound in the United States, even if the buyer acts entirely abroad. *See, e.g.*, *Arco Capital Corps. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 542-43 (S.D.N.Y. 2013) (*Morrison* satisfied where transaction involved a Cayman Islands purchaser who acted abroad, where defendant argued that "the transaction cannot be domestic because the purchase involved a Cayman Islands' purchaser and a Cayman Islands' issuer, which was completed only upon acceptance by the Issuer in the Cayman Islands.").

Here, lead plaintiff Banco Safra has clearly satisfied the alternative pleading requirement of *Absolute Activist* even if it took no action whatsoever in the United States. Its counterparties, listed in Exhibit A to the Complaint, all acted *solely* in the United States and indisputably incurred irrevocable liability here. Thus, Lead Plaintiff has satisfied the controlling pleading requirements set by the court in *Absolute Activist*.[4]

---

[4] "At the pleading stage, it is sufficient for the plaintiff 'to allege facts leading to the ***plausible inference***' of a domestic transaction." *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018) (quoting *Absolute Activist*, 677 F.3d at 68) (emphasis added).

**III.        Alternatively, Lead Plaintiff Requests Leave to Amend**

In the event the Court determines not to vacate the judgment and deny Defendants' motion to dismiss, Lead Plaintiff alternatively requests leave to amend the Complaint.  Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  Especially in securities litigation, a "technical and demanding corner of law," *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), courts allow at least one opportunity to amend following guidance from the court.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (affording plaintiffs five opportunities to amend in order to address the substantive guidance of the court).

The Second Circuit has rejected rigid rules setting a specific time bar to requesting leave to replead.  For example, in *Williams*, the Second Circuit rejected the district court's rationale for denying the plaintiff's request to replead on the basis that "she failed to request an opportunity to replead in the first instance," holding that whether the district court required the plaintiff to seek leave immediately upon answering the motion to dismiss or immediately upon receipt of the court's ruling granting the motion, such a requirement "violated the liberal spirit of Rule 15."  659 F.3d at 214.  As a result, the Second Circuit also held that plaintiffs should have an opportunity to replead "even when leave to replead is not sought until after entry of judgment."  *Id*. at 213.

Here, the Court dismissed with prejudice Lead Plaintiff's Complaint despite the fact that in opposing Defendants' motion to dismiss, Lead Plaintiff specifically requested leave to amend the Complaint in the event of dismissal.  Dkt. 87 at 32 n.45.  Moreover, when this Court dismissed the Complaint without granting Lead Plaintiff leave to amend, it was ***the first time*** the Court ruled on the merits of Lead Plaintiff's claims.  At no prior time until the Court's Order did it weigh or analyze the merits of Lead Plaintiff's claims of domesticity under *Morrison*.  Accordingly, Lead Plaintiff had no prior analysis or guidance from the Court and ***no real opportunity to amend*** the

Complaint in light of the Court's rationale.

An amended pleading in the form attached hereto as [Proposed] [Third] Amended Complaint (Exhibit 1) would leave no room for doubt that Lead Plaintiff's purchases of Samarco bonds satisfy *Morrison*. [Proposed] [Third] Amended Complaint pleads that:

- The transactions listed in Exhibit A, as reflected in that exhibit, were consummated with U.S. dollars.

- Moreover, all of the transactions listed in Exhibit A were conducted by Banco Safra and/or its affiliates ("Safra") using U.S. dollars and were paid from Banco Safra's bank accounts located in New York. For each transaction, Safra used only money (U.S. dollars) from its U.S. bank accounts in order to pay for the securities listed in Exhibit A.

- All of the sellers who sold the Samarco securities (*i.e.*, the Samarco bonds to Safra) were located in the United States at the time they incurred irrevocable liability to deliver the securities to Safra.

- For each transaction, the seller was located in the United States at the time it incurred irrevocable liability to sell the securities listed in Exhibit A to Safra. When Safra placed the order to purchase Samarco bonds, the relevant personnel involved in the transaction at seller was located in the United States and made the decision in the United States to sell the Samarco bonds to Safra. The seller accepted Safra's offer to purchase the Samarco bonds in the United States at the prices and quantities listed in Exhibit A. The seller committed itself and bound itself in the United States to sell the Samarco bonds to Safra at the prices and quantities listed in Exhibit A. At that time, when the seller in the United States accepted Safra's offer, Safra was also committed to purchase these bonds at the agreed-upon price. After Safra and the seller agreed to bind themselves to effectuate these transactions, neither party could legally renege on the transactions. Safra used its bank accounts located in the United States to pay for the Samarco bonds and the money was sent to the seller's bank accounts located in the United States.

- Each after-market transaction listed in Exhibit A, with the exception of the Barclays transactions, was reported to TRACE, the "automated system developed by FINRA [the Financial Industry Regulatory Authority] that, among other things, accommodates reporting and dissemination of transaction reports where applicable in TRACE-Eligible Securities." *See* http://finra.complinet.com/en/display/display.html?rbid=2403&element_id=4400. Only *U.S. (domestic) transactions* are reported to TRACE by FINRA member firms. *See* https://www.finra.org/sites/default/files/NoticeDocument/p314034.pdf.

Collectively, these allegations raise the plausible inference of a domestic transaction. *Giunta*, 893 F.3d at 79.

**CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant Lead Plaintiff's motion to reconsider, vacate the Order, and enter a new order denying Defendants' motion to dismiss.

Dated:  July 9, 2019                    Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Emma Gilmore
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212-6612-1100
Facsimile: 917-463-1044

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 North LaSalle
Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-229-8811

*Lead Counsel for Lead Plaintiff Banco Safra S.A.*